Filed 5/22/24  P. v. Dominguez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082713 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN441663) |
| MIGUEL ANTONIO DOMINGUEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Michael D. Washington, Judge.  Affirmed.

Laura Vavakin, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

The People charged Miguel Antonio Dominguez with felony child abuse likely to cause great bodily harm or death (Pen. Code,[1] § 273a, subd. (a)) for

_____

[1]    Statutory references are to the Penal Code unless otherwise specified.

endangering his eight-year-old daughter, M.D., between March 28, 2022, and October 5, 2022. A jury convicted him of the lesser included offense of misdemeanor child abuse. (§ 273a, subd. (b)).

The court sentenced Dominguez to 30 days in the county jail and issued a no-contact order under section 136.2, subdivision (i), prohibiting him from contacting his daughter unless otherwise authorized by the family or juvenile court.

Dominguez filed a timely notice of appeal.

Dominguez's counsel has filed a brief seeking our independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*) to determine whether there are any arguable issues for review. We sent Dominguez notice that his attorney had filed a *Wende* brief and provided him with the opportunity to file a supplemental brief. He has not responded. After our independent review of the record, we affirm the judgment.

## FACTUAL BACKGROUND

Melissa H. lived in the same apartment complex as Dominguez and M.D. and recalled seeing M.D. running around the apartment complex at all hours of the night. On October 5, 2022, Melissa saw M.D. looking inside the trash dumpster for the apartment building. Fifteen minutes later, M.D. was in the dumpster, and it appeared to Melissa that she was looking for food. Melissa asked M.D. if she was okay and made her a sandwich, but M.D. left without taking it. She said when she asked M.D. where her father was, M.D.'s body language changed. Something about the incident "didn't sit well with [Melissa]" so she called the police nonemergency number to request a welfare check on M.D.

An Escondido police officer was informed that an eight-year-old girl had been left alone for four days and arrived to conduct the welfare check. He could not locate anyone at the apartment number provided to him, but Melissa flagged him down as he was leaving. After speaking with her, he found M.D., whom he described as having very greasy, dirty hair and dirty clothes. M.D. said her father had been there the night before, but she did not know where he was that day. She did not have a key to the apartment or a mobile phone and did not know her father's full name. She told the officer she crawled back into the apartment through a four-foot-high window. When Dominguez had not returned after two hours, another officer took M.D. into protective custody.

During an interview with a forensic investigator, M.D. reported that there were "ten rats and ten mice" in her home and that one rat bit her on the finger. She said the rats got onto her bunkbed and "were pooping everywhere." She, her father, and his girlfriend used glue traps to catch rats and sprayed poisonous foam in holes where rodents entered the apartment, but they were unable to solve the problem.

M.D. also described an incident wherein her dog caught a possum that had gotten into the apartment. M.D. eventually picked up the bloody possum in a paper bag and, because her father did not want to put it in the trash, M.D. used long tongs to throw the bag away after the possum died. When asked if she felt safe living in her home, she said, "No, not at all."

M.D. explained that the refrigerator contained flies, spiders, and sugar worms and smelled bad. She said her father left water bottles, and she would drink those when she was hungry and there was no food. Sometimes Dominguez left her locked in the apartment. To satisfy her hunger, M.D. would climb out the window, "look both ways and walk past the road," climb a

hill, and drink the juice out of sour yellow flowers growing on the hillside. She admitted she felt frightened when Dominguez left her home alone.[2]

On occasion, M.D. said Dominguez left her in the hot sun in the car outside a casino for "like nine minutes and ten hour . . . but sometimes he would take nine hours."

A neighbor testified at trial that she had seen M.D. climb out the kitchen window when her father was not home. Once in June 2022, and again in August, M.D. came to her crying because she could not find her father. The neighbor was concerned for M.D. because Dominguez's apartment was dirty, there were tools in the kitchen, and she was afraid M.D. would cut or burn herself. She also said M.D. told her she did not attend school.

Another neighbor testified that M.D. would come to her apartment during the school day to see if her daughter could play. The neighbor assumed M.D. was homeschooled because she "seemed pretty smart."

According to the building property manager, other tenants in the building complained about finding mice and rats in their units. When he investigated with the downstairs neighbor and an exterminator, they discovered Dominguez's balcony was covered with tires, trash bags, bins, and toys, and that the rodents appeared to be coming from upstairs. They cut down a tree limb leading to the balcony and were finally able to resolve the rodent problem after the property manager evicted Dominguez for nonpayment of rent.

When Dominguez moved out in February 2023, the property manager took photographs of the apartment. He said there was dog feces everywhere, and the apartment was cluttered with rotten food, car parts, and trash.

---

[2]  M.D. reiterated most of this information when she testified at trial.

At trial, the jury also heard evidence about a prior case in which a different jury was unable to reach a verdict. Dominguez had left M.D., then two years old, unsecured in the car with the air conditioning running for about an hour and fifteen minutes while he was in a car-part junkyard. A store employee found M.D. alone in a car full of small tools, fuses, and other potential choking hazards and called the police.

## DISCUSSION

As we have noted, appellate counsel has filed a *Wende* brief and asks the court to independently review the record for error. To assist the court in its review of the record, and in compliance with *Anders*, counsel has identified possible issues that were considered in evaluating the potential merits of this appeal: (1) whether the trial court prejudicially erred in admitting photographs of the inside of Dominguez's apartment that were taken four months after law enforcement removed M.D. and one day after management evicted Dominguez; (2) whether the trial court prejudicially erred by admitting the portion of M.D.'s recorded interview wherein she mentions that Dominguez left her alone in the car while he was in a casino; and (3) whether the trial court erred in refusing defense counsel's request to instruct the jury with CALCRIM No. 3500 (unanimity).

We have reviewed the record for error as required by *Wende* and *Anders*. We have not discovered any arguable issues for reversal on appeal. Competent counsel has represented Dominguez on this appeal.

5

## DISPOSITION

The judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

IRION, J.

DO, J.

6